UNITED STATES DISTRICT COURT

DISTRICT OF CONNECTICUT


ROBERT MERRIAM

                                        PRISONER
        v.                      Case No. 3:09cv656 (DJS)

DAVID N. STRANGE
THERESA C. LANTZ

### RULING ON PETITION FOR WRIT OF HABEAS CORPUS

The petitioner, Robert Merriam, an inmate confined at Osborn Correctional Institution in Somers, Connecticut, brings this action *pro se* for a writ of habeas corpus pursuant to 28 U.S.C. § 2254.  He challenges his convictions for sexual assault and risk of injury to a minor.  For the reasons that follow, the petition is denied.

## I.   Standard of Review

The federal court will entertain a petition for writ of habeas corpus challenging a state court conviction only if the petitioner claims that his custody violates the Constitution or federal laws.  28 U.S.C. § 2254(a).  A claim that a state conviction was obtained in violation of state law is not cognizable in the federal court.  *See Estelle v. McGuire*, 502 U.S. 62, 68 (1991).

The federal court cannot grant a petition for a writ of habeas corpus filed by a person in state custody with regard to any claim that was rejected on the merits by the state court

unless the adjudication of the claim in state court either:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).  Clearly established federal law is found in holdings, not dicta, of the Supreme Court at the time of the state court decision.  *See Carey v. Musladin*, 549 U.S. 70, 74 (2006).  The law may be a generalized standard or a bright-line rule intended to apply the standard in a particular context. *Kennaugh v. Miller*, 289 F.3d 36, 42 (2d Cir. 2002).

A decision is "contrary to" clearly established federal law where the state court applies a rule different from that set forth by the Supreme Court or if it decides a case differently than the Supreme Court on essentially the same facts.  *Bell v. Cone*, 535 U.S. 685, 694 (2002).  A state court unreasonably applies Supreme Court law when the court has correctly identified the governing law, but unreasonably applies that law to the facts of the case, or refuses to extend a legal principle clearly established by the Supreme Court to circumstances intended to be encompassed by the principle.  *See Davis v. Grant*, 532 F.3d 132, 140 (2d Cir. 2008).  The state court decision must be more than incorrect; it also must be objectively unreasonable which is a

substantially higher standard.  *See Schriro v. Landrigan*, 550
U.S. 465, 473 (2007).

When reviewing a habeas petition, the federal court presumes
that the factual determinations of the state court are correct.
The petitioner has the burden of rebutting that presumption by
clear and convincing evidence.  *See* 28 U.S.C. § 2254(e)(1);
*Cullen v. Pinholster*, ___ U.S. ___, 131 S. Ct. 1388, 1398 (2011)
(standard for evaluating state-court rulings where constitutional
claims have been considered on the merits and which affords
state-court rulings the benefit of the doubt is highly
deferential and difficult for petitioner to meet).  In addition,
the federal court's review under section 2254(d)(1) is limited to
the record that was before the state court that adjudicated the
claim on the merits.  *See Id.*

## II.  <u>Procedural History</u>

On June 4, 1987, New Britain Police Detective Lawrence
Betterini secured a warrant for the arrest of the petitioner on
charges of sexual assault and risk of injury to a minor.  It was
not until September 1997 that New Britain police officers and
detectives were able to locate the petitioner, who was living in
Vermont.  On September 13, 1997, Vermont state police officers
apprehended the petitioner.  Subsequently, the petitioner
traveled to Connecticut and New Britain police officers placed
him under arrest.  *See State v. Merriam*, 264 Conn. 617, 625

(2003).

On October 20, 1997, the petitioner privately retained Attorney Robert McKay to represent him in the criminal matter. A jury trial began on March 3, 1999, in the Connecticut Superior Court for the Judicial District of New Britain. *See Merriam v. Warden, State Prison*, No. TSRCV040004319S, 2007 WL 2034825, at *1 (Conn. Super. Ct. May 25, 2007). After the State of Connecticut presented its case-in-chief, Attorney McKay called four witnesses to the stand to testify. On March 18, 1999, Attorney McKay intended to call four more witnesses, all of whom resided in Vermont. When none of the four witnesses appeared to testify, Attorney McKay moved for a mistrial. The judge granted the motion over the prosecutor's objection and dismissed the jury. *See id.*

On September 6, 2000, a different Superior Court Judge presided over a second jury trial on the same criminal charges against the petitioner. On September 11, 2000, the jury convicted the petitioner of one count of sexual assault in the first degree in violation of Connecticut General Statutes § 53a-70(a), one count of sexual assault in the second degree in violation of Connecticut General Statutes § 53a-71(a)(1) and one count of risk of injury to a child in violation of Connecticut General Statutes § 53-21. On November 6, 2000, the petitioner was sentenced to a total term of imprisonment of thirty years.

4

*See id.* Attorney McKay represented the petitioner at all times from the conclusion of the first trial through the conclusion of the second trial and at the sentencing hearing.

Deputy Assistant Public Defender Moira Buckley represented the petitioner on appeal. She challenged petitioner's conviction on four grounds. *See Merriam*, 264 Conn. at 622. On July 15, 2003, the Connecticut Supreme Court affirmed the judgment of conviction. *See id.* at 678.

In December 2003 the petitioner filed a petition for writ of habeas corpus in state court alleging that his trial attorney and appellate attorney rendered ineffective assistance counsel and the prosecutor exhibited misconduct by misstating the law during closing argument and by withholding exculpatory evidence. On May 25, 2007, following an evidentiary hearing, a Connecticut Superior Court judge denied the petition. *See Merriam*, 2007 WL 2034825, at *20.

On December 30, 2008, the Connecticut Appellate Court dismissed the petitioner's appeal of the decision denying his habeas petition. *See Merriam v. Commissioner of Correction*, 111 Conn. App. 830(2008) (per curiam). On February 11, 2009, the Connecticut Supreme Court denied the petition for certification to appeal from the Connecticut Appellate Court's decision. *See Merriam v. Commissioner of Correction*, 290 Conn. 915(2009). In April 2009 the petitioner commenced this action challenging his

conviction on three grounds of ineffective assistance of counsel.

## III. **Discussion**

The petitioner asserts three grounds for relief: (1) his trial attorney was ineffective in failing to pursue a defense that the prosecution was barred by the statute of limitations; (2) his trial attorney was ineffective because he failed to properly advise him on whether he should accept a three year plea offer; and (3) his trial and appellate attorneys were ineffective in failing to recognize that there was insufficient evidence to prove the element of the use of force in the first degree sexual assault charge.

Ineffective assistance of counsel claims are reviewed under the standard set forth in *Strickland v. Washington*, 466 U.S. 668 (1984).  To prevail, the petitioner must demonstrate, first, that counsel's conduct was below an objective standard of reasonableness established by prevailing professional norms and, second, that this deficient performance caused prejudice to him. *Id.* at 687-88.  In light of "the variety of circumstances faced by defense counsel [and] the range of legitimate decisions regarding how best to represent a criminal defendant," the performance inquiry necessarily turns on "whether counsel's assistance was reasonable considering all the circumstances." *Id.* at 688-689.  The court evaluates counsel's conduct at the time the decisions were made, not in hindsight, and affords

substantial deference to counsel's decisions. *See Rompilla v. Beard*, 545 U.S. 374, 381 (2005). Because counsel is presumed to be competent, the petitioner bears the burden of demonstrating unconstitutional representation. *See United States v. Cronic*, 466 U.S. 648, 658 (1984).

To satisfy the prejudice prong of the *Strickland* test, the petitioner must show that there is a "reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different;" the probability must "undermine confidence in the outcome" of the trial. *Strickland*, 466 U.S. at 694. To prevail, the petitioner must demonstrate both deficient performance and sufficient prejudice. *See id.* at 700. Thus, if the court finds one prong of the standard lacking, it need not consider the remaining prong.

In analyzing the petitioner's ineffective assistance of trial counsel claims, the state court applied the standard established in *Strickland*. Because the state court applied the correct legal standard, the state court decision cannot meet the "contrary to" prong of section 2254(d)(1).

### A.   Ineffective Assistance of Trial Counsel

The petitioner claims that his trial attorney was ineffective in three ways. The court addresses each alleged type of ineffective assistance separately.

### 1.   **Failure to Pursue Statute of Limitations Defense**

In the first ground for relief, the petitioner contends that his trial attorney neglected to pursue the claim that his prosecution was barred by the five-year statute of limitations. The petitioner raised this claim in his state habeas petition.

The court will consider the last reasoned state court decision to determine whether the decision is an unreasonable application of federal law.  *See Ylst v. Nunnemaker*, 501 U.S. 797, 804 (1991).  Here, the court reviews the Connecticut Superior Court's decision denying the petition for writ of habeas corpus.

In the state habeas petition, the petitioner initially claimed that his trial attorney had not even filed a motion to dismiss the charges against him as barred by the five-year statute of limitations.  The habeas judge noted that in fact the petitioner's trial counsel had filed a motion to dismiss the charges against the petitioner on limitations grounds, but after researching the issue and consulting with the petitioner, decided the basis for the motion was not meritorious and did not press for a ruling on the motion.  The trial judge never scheduled a hearing on the motion or otherwise ruled on the motion.  *See Merriam*, 2007 WL 2034825, at *12.

In considering the petitioner's claim that trial counsel was ineffective for failing to diligently pursue the motion to

8

dismiss on statute of limitations grounds, the habeas judge adopted the following facts set forth by the Connecticut Supreme Court on direct appeal of the petitioner's convictions:

> In May 1987, the victim, then a three and one-half year old female, lived in an apartment with her mother, her older sister, her sister's young daughter, and the [petitioner]. The [petitioner], who was the boyfriend of the victim's mother, had resided in the apartment since January 1987. The victim, whose biological father had passed away when she was seven months old, called the [petitioner], "Daddy." Between January 1987 and May 1987, no man other than the [petitioner] resided in the apartment. Furthermore, the victim's mother occasionally left the victim home alone with the [petitioner].
>
> Within a few weeks after the [petitioner] had moved into the apartment, the victim began to behave in a manner that was troubling and unfamiliar to those around her. In particular, within a few weeks after the [petitioner] began living with the victim and her mother, the victim began to exhibit sexual behavior inappropriate for a child her age. The victim's mother noticed that the victim often placed her hands down her pants. When the victim's mother bathed the victim, the victim would "gyrate" while in the bathtub. The victim's sister also noticed that the victim repeatedly touched her genital area. On more than one occasion, the victim's sister observed the victim lying face down on her bed making "up and down" motions with her body. Both the victim's mother and sister noticed that, during this time, the victim's vaginal area was irritated, red and swollen. They also noticed that the victim was very withdrawn, quiet and nervous. Although the victim had been toilet trained before the [petitioner] began living in the apartment, she thereafter began urinating in her bed at night. The victim had

begun to suck her thumb so frequently that her thumbnail eventually fell off. Neither the victim's mother nor the victim's sister ever had seen the victim act in this manner before.

Employees of the day care center that the victim attended also began to notice that the victim had been behaving strangely. They observed that the victim was extremely withdrawn and often had her hand in her pants. When employees at the day care center would rub the victim's stomach or back to help her relax during nap time, the victim would become "very sensually aroused." In addition, the victim cried after urinating.

On or about May 12, 1987, Ida Yelding, a social worker employed by the day care center, noticed that the victim had her hands in her pants while she was moving her hips in an unusual manner. In Yelding's view, it was [as] if the victim was approaching some sort of sexual climax. Yelding, who had worked at the day care center for more than thirteen years, never before had witnessed conduct of this kind by a child. Concerned about the victim's behavior, Yelding approached the victim and asked her what was wrong. The victim responded, "Daddy."

Yelding immediately reported this incident to Carolyn Miranda, the director of child care programs at the day care center. Miranda thereupon went to the victim's classroom, where she observed that the victim was visibly upset. After speaking with Yelding and the victim, Miranda, who, in light of the circumstances, suspected that the victim had been sexually abused, filed a report that same day with the State Department of Children and Youth services (department), what is now the Department of Children and Families. In that report, Miranda revealed, *inter alia,* that the victim had stated to the teacher that "'Daddy' touched her." Miranda subsequently contacted the victim's mother.

Thereafter, the victim's mother asked the victim what was wrong. The victim responded that "Daddy" had "hurt her." The victim further indicated that the incident had occurred some time during the first two weeks of May 1987. When the victim's mother confronted the [petitioner] with this information, he denied that he had ever sexually abused the victim. Nevertheless, the victim's mother told the [petitioner] that she intended to notify the police, and, soon thereafter, the [petitioner], without explanation, vacated the apartment and left the state.

On or about May 21, 1987, the victim's mother brought the victim to William Currao, a pediatrician. Currao performed a physical examination of the victim, including an examination of her genital area. That examination revealed various injuries uncommon for a girl of the victim's age, all of which were consistent with digital or penile penetration of the victim's vagina. In particular, Currao found that the victim's labia majora were red and irritated and that her hymen had been torn.

On May 27, 1987, the victim and her mother met with Detective Lawrence Betterini of the New Britain police department. During an interview at the police station, the victim revealed to Betterini that the [petitioner] had touched her vagina with his penis.

Betterini attempted to contact the [petitioner] to speak with him about the allegations of sexual abuse. In particular, Betterini spoke with several of the [petitioner's] family members and tried to contact the [petitioner] at various addresses but was unable to locate him. On June 4, 1987, Betterini obtained an arrest warrant for the [petitioner]. Continued efforts by the police to locate the [petitioner] were unsuccessful. The [petitioner] finally was apprehended by state police in Vermont on September 13, 1997, and, thereafter, was

11

extradited to this state.

*Merriam*, 2007 WL 2034825, at *2-3 (internal quotation marks omitted)(quoting *Merriam,* 264 Conn. at 622-25).

In deciding this claim, the habeas judge relied on the case of *State v. Crawford*, 202 Conn. 443 (1987). *See Merriam*, 2007 WL 2034825, at *12-13. In *Crawford*, the Connecticut Supreme Court held that in order to toll the statute of limitations, an arrest warrant issued within the applicable limitations period must be executed without unreasonable delay. The determination as to what period of time would be reasonable was to be made based on the facts of the case. *Crawford*, 202 Conn. at 450-51.

The state habeas judge found that evidence introduced at the petitioner's criminal trial demonstrated that in response to information conveyed to him by the victim's mother regarding her intention to report his sexual assault of her daughter to the police, he left the State of Connecticut. The petitioner's act of relocating to another state tolled the limitations period. Based on the testimony of Detective Betterini at both the criminal trial and the habeas hearing, the habeas judge concluded that the New Britain Police Department had exhausted various methods of locating the petitioner, including contacting petitioner's family members and entering the warrant for his arrest in the National Crime Information Center ("NCIC") database. *See Merriam*, 2007 WL 2034825, at *4 n.10,*14. It was

12

not until 1997 that police officials became aware that driver's license information had been added to the NCIC database. Petitioner conceded that he did not have a valid driver's license after he left Connecticut and that his license was not restored until 1996.  Once police officials searched for the petitioner using his driver's license information on NCIC, they were able to locate him in Vermont.  *See id.* at *4 n.10.

Although the petitioner testified that he had lived openly in Vermont, had worked for a roofing company and a cheese company, had paid federal and state taxes, and that his tax refund checks were turned over to the State of Connecticut to pay child support that he owed, he did not introduce written documentation or otherwise corroborate any of this testimony. *See id.* at *8.  The petitioner testified that he had received a letter from Detective Betterini in 1989 at his residence in Vermont and had spoken to him on the phone, but did not provide any documentary evidence of the letter.  Detective Betterini testified at the criminal and habeas trials that he had not spoken to the plaintiff on the phone at any time and was not aware of his whereabouts until 1997.  Furthermore, the petitioner testified that he did not make trial counsel aware of the letter allegedly sent to him by Detective Betterini until after the conclusion of the second trial.  *See id.* at *5.

Based on this testimony and other evidence in the record,

the habeas judge determined that the credible evidence showed
that the New Britain Police Department did not become aware of
the petitioner's whereabouts until 1997 and that there was no
evidence of an unreasonable delay by police officials in
executing the arrest warrant.  Thus, the habeas judge reasoned
that trial counsel's determination that the motion to dismiss
lacked merit and should not be pursued was well-founded.  *See id.*
at *14.  The habeas judge concluded that the petitioner had
failed to demonstrate that trial counsel's conduct was deficient
or that he was prejudiced by the conduct.

The petitioner has presented no evidence to overcome the
presumption of correctness that is attributed to the factual
findings of the state habeas judge.  *See Rice v. Collins*, 546
U.S. 333, 338-39 (2006); 28 U.S.C. § 2254(e)(1).  A petitioner
does not establish ineffective assistance when his attorney fails
to advance a meritless claim or motion.  See *United States v.
Kirsh*, 54 F.3d 1062, 1072 (2d Cir. 1995)(trial counsel's
"election not to pursue certain motions that lacked merit" did
not constitute conduct that fell below objective standard of
reasonableness).  This court concludes that the Connecticut
Superior Court properly applied the *Strickland* standard in
reviewing the petitioner's ineffective assistance of counsel
claim and determining that trial counsel's decision not to pursue
the motion to dismiss on statute of limitations grounds was based

14

on a well-supported determination that the motion to dismiss lacked merit.  *See Cullen*, 131 S. Ct. at 1406 (noting the "wide latitude counsel must have in making tactical decisions" and affirming that "[b]eyond the general requirement of reasonableness, specific guidelines are not appropriate") (internal quotation marks omitted).  Thus, counsel's conduct fell "within the wide range of professionally competent assistance." *Strickland*, 466 U.S. at 690.

Furthermore, the habeas judge correctly concluded that the petitioner had not demonstrated that if trial counsel had pursued a ruling on the motion to dismiss, the judge would have granted the motion.  Given the evidence of the efforts of the New Britain Police Department to locate the petitioner after he fled from Connecticut, it was unlikely that the trial judge would have concluded that there was an unreasonable delay in executing the arrest warrant on the petitioner.  Thus, the petitioner has not shown that but for trial counsel's actions, he would have succeeded on the motion to dismiss, and he has failed to establish the prejudice prong under *Strickland*.

The petitioner has not shown that the Connecticut Superior Court's decision was an unreasonable application of the *Strickland* standard to the facts of the case.  Accordingly, the habeas petition is denied on this ground.

15

### 2)   Failure to Advise Regarding Plea

In a hearing held on May 24, 2000, prior to the second trial, the trial judge informed the petitioner that a one-time offer of a three-year sentence was available. *See* Mem. Opp'n Pet. Writ Habeas Corpus, App. J at 45-53.  The petitioner rejected the offer.  He generally contends that trial counsel failed to properly evaluate the prosecutor's case and advise him as to whether to accept the sentence offered by the trial judge.

The Sixth Amendment right to counsel "extends to the plea-bargaining process." *Lafler v. Cooper*, ___ U.S. ___, 132 S. Ct. 1376, 1384 (2012).  The two-part *Strickland* test applies to claims of ineffective assistance counsel in the context of plea negotiations, including challenges to both the acceptance of a plea offer and the rejection of a plea offer. *See id.* (applying *Strickland* to claim that counsel was ineffective in advising petitioner to reject plea offer); *Hill v. Lockhart*, 474 U.S. 52, 57 (1985) (applying *Strickland* to claim that attorney mis-informed petitioner regarding plea offer leading petitioner to accept guilty plea).  The performance prong requires that the defendant demonstrate "'that counsel's representation fell below an objective standard of reasonableness.'" *Hill*, 474 U.S. at 57 (quoting *Strickland*, 466 U.S. at 687-88.)

In addressing the performance prong, the Second Circuit has determined that in the context of providing advice surrounding a

16

plea offer, "counsel must communicate to the defendant the terms of the plea offer, and should usually inform the defendant of the strengths and weaknesses of the case against him, as well as the alternative sentences to which he will most likely be exposed." *Purdy v. United States*, 208 F.3d 41, 45 (2d Cir. 2000)(citation omitted).  In giving advice, however, "a lawyer must take care not to coerce a client into either accepting or rejecting a plea offer," because "the ultimate decision whether to plead guilty must be made by the defendant." *Id.*

To demonstrate prejudice in the context of a guilty plea, the petitioner must demonstrate that "counsel's constitutionally ineffective performance affected the outcome of the plea process." *Hill*, 474 U.S. at 59.  That is, the petitioner must demonstrate "a reasonable probability that but for [counsel's] deficiencies, [he] would have pled guilty." *Purdy*, 208 F.3d at 49.  To prevail, the petitioner must demonstrate both deficient performance and sufficient prejudice.  *See Strickland*, 466 U.S. at 700.  Thus, if the court finds one prong of the standard lacking, it need not consider the remaining prong.

The habeas judge reviewed the transcript of a pre-trial hearing held on May 24, 2000, about four months before the start of the second trial, and concluded that the trial judge had extended an offer to the petitioner of three years to be served consecutively to a sentence imposed against the petitioner in May

17

1998 in another case. Furthermore, there was evidence that both trial counsel and the trial judge explained the maximum sentence that the petitioner could receive if the case were to go to trial. *See Merriam*, 2007 WL 2034825, at *11.

The habeas judge found that the petitioner had proclaimed his innocence at all times and had rejected several plea offers prior to the offer made by the trial judge in May 2000. *See id.* at *6. Trial counsel testified that he had communicated the strengths and weaknesses of the case to the petitioner as well as his opinion that, based on the evidence and witnesses presented at the first trial, the prosecution's case was weak. *See* Mem. Opp'n Pet. Writ Habeas Corpus, App. P, Jan. 26, 2007 Tr. at 25-32. Trial counsel intended to rely on alibi and misidentification defenses, but also intended to challenge the credibility of the mother of the victim because the victim herself had never identified the petitioner by name. *See Merriam*, 2007 WL 2034825, at *5. Trial counsel testified at the habeas hearing that after he had informed the petitioner of the strengths and weaknesses of the case and the maximum sentence the judge might impose if the case were to go to trial, it was up to the petitioner to decide whether or not to plead guilty and accept the sentence offered by the trial judge. The habeas judge concluded that trial counsel's conduct during the plea offer did not constitute incompetent representation under the first prong of *Strickland*.

"Counsel's conclusion as to how best to advise a client in order to avoid, on the one hand, failing to give advice and, on the other, coercing a plea enjoys a wide range of reasonableness . . . ." *Purdy*, 208 F.3d at 45.  Factors that may be considered by counsel in deciding what advice to give a defendant as to a plea offer include "defendant's chances of prevailing at trial, the likely disparity in sentencing after a full trial as compared to a guilty plea, . . . whether defendant has maintained his innocence, and the defendant's comprehension of the various factors that will inform his plea decision."  *Id.*

The habeas judge found the testimony of trial counsel to be credible and the testimony of the petitioner to be self-serving and lacking in credibility.  The state habeas judge's factual findings and credibility determinations are "presumed to be correct," and the petitioner has the "burden of rebutting [that] presumption of correctness by clear and convincing evidence."  28 U.S.C. § 2254(e)(1).  Furthermore, in reviewing a claim of ineffective assistance of counsel, this court is not permitted to reassess the state habeas judge's credibility determinations of witnesses, when it has not heard the testimony or observed the demeanor of those witnesses.  *See Shabazz v. Artuz*, 336 F.3d 154, 163 (2d Cir. 2003)("Credibility determinations are properly within the province of the state court that presided over the trial and evidentiary hearing."); *Cotto v. Hebert*, 331 F.3d 217,

19

233 (2d Cir. 2003) (presumption of correctness as to the factual findings by the trial judge under 28 U.S.C. 2254(e)(1) is "particularly important when reviewing the trial court's assessment of witness credibility").  The petitioner has offered insufficient evidence to rebut the habeas judge's factual or credibility determinations.

The record reflects that trial counsel did advise the petitioner of the sentencing disparities in comparing the plea versus a conviction.  Furthermore, he did explain the strengths and weaknesses of the state's case against him and the petitioner was aware of the evidence against him at the time the trial judge offered the plea.  The plaintiff consistently maintained his innocence as to the criminal charges throughout the first trial and second trial and had rejected prior plea offers.

The habeas judge concluded that there was no evidence that trial counsel had failed to adequately investigate the state's case against the petitioner.  Trial counsel thoroughly reviewed the evidence and tracked down and interviewed every potential witness the petitioner identified who could provide him with an alibi for the time period in question.  *See Merriam*, 2007 WL 2034825, at *4. The expert witness who testified at the habeas hearing offered no critical testimony as to the sufficiency of trial counsel's investigation of the evidence and his reliance on the affirmative defenses of alibi and misidentification or his

conduct during the hearing in which the trial judge offered the petitioner a sentence of three years. *See* Mem. Opp'n Pet. Writ Habeas Corpus, App. J, Jan. 22, 2007 Tr. at 100-110.

Furthermore, the petitioner has not demonstrated that the evidence against him was so substantial that there was no possible chance of acquittal. Thus, a decision to proceed to trial was not unreasonable given the perceived weakness of the evidence against him and the witness testimony in support of his alibi defense. The petitioner's contention that trial counsel should have affirmatively told him to accept the guilty plea and sentence offered by the trial judge is unavailing. *See Purdy*, 208 F.3d at 45 ("the ultimate decision whether to plead guilty must be made by the defendant").

The court concludes that the habeas judge's determination that the information provided by trial counsel regarding the sentence offered by the trial judge was not deficient, but instead fell "within the wide range of professionally competent assistance." *Strickland*, 466 U.S. at 690. Thus, it was not an unreasonable application of the performance prong of the *Strickland* standard to the facts of the case.

The habeas judge also determined that the petitioner had not met the prejudice prong of *Strickland*. At the habeas hearing, the petitioner testified that he rejected the trial judge's offer of three years because the trial judge had failed to explain the

complete terms of the offer.  *See* Mem. Opp'n Pet. Writ Habeas Corpus, App. P, Jan. 26, 2007 Tr. at 8-10, 17-20.  The petitioner acknowledged that trial counsel had made a request to the trial judge to explain the parameters of the plea offer, including any probationary term that might be part of the offer.  *See id.* at 9, 17, 19.  In response, the trial judge indicated that the sentence offered would extend his current sentence by three years.  *See* id. at Mem. Opp'n Pet. Writ Habeas Corpus, App. J at 49.  The habeas judge found that it was clear that the offer was for three years to serve and did not include any term of probation, parole or special parole.  *See Merriam*, 2007 WL 2034825, at *12.

The petitioner has not otherwise indicated or testified that his decision to reject the plea was influenced by trial counsel's alleged failure to recognize the weaknesses of his case or to have mistakenly assessed his chances of prevailing at trial. Thus, the petitioner has not demonstrated prejudice as a result of any conduct of trial counsel in connection with the plea offer.  The habeas judge determined that the petitioner's claim regarding the plea offer was based on petitioner's post-trial realization that he had made a poor decision when he failed to accept the three year offer.  Such a claim does not establish prejudice on the part of trial counsel under *Strickland*.  The petitioner has not shown that the Connecticut Superior Court's decision was an unreasonable application of the prejudice prong

22

of *Strickland* standard to the facts of the case.  Accordingly, the habeas petition is denied on this ground.

### 3.   Failure to Challenge Use of Force Element

The petitioner argues that trial counsel was ineffective in failing to move for a judgment of acquittal on the ground that there was insufficient evidence to meet the use of force element of the first degree sexual assault charge.  The petitioner contends that no evidence was offered to support force having been used against the victim.

Trial counsel testified that he had made a strategic decision not to attack the element of the use of force as to the sexual assault in the first degree claim because his argument in favor of acquittal was based on the defense that the petitioner had not committed the crime.  Thus, his approach was to concede that the victim had been sexually assaulted, but to argue that the petitioner was not the individual who had engaged in the assault.  This was consistent with the defenses of alibi and misidentification.  *See id.,* at *17.

The Superior Court judge credited trial counsel's testimony at the habeas hearing regarding his decision to concede that the victim had been assaulted, but to argue that the petitioner was not the assailant by focusing on the alibi and misidentification defenses.  Counsel believed that if he had challenged the

23

sufficiency of the evidence as to the element of the use of force
it would have undermined his argument that the petitioner was not
the individual who had assaulted the victim.  In addition, trial
counsel was concerned that in view of the testimony of the expert
witness as to the cause of the injuries suffered by the three-
year old victim, any argument that force had not been used
against the victim would likely have alienated the jury.  The
habeas court concluded that trial counsel's decision not to
contest the use of force element of the crime of sexual assault
in the first degree during the trial or in a motion for judgment
of acquittal was a reasonable tactical choice.  *See id.* at *17.

A defense counsel's strategic decisions will not support an
ineffective assistance claim as long as those decisions are
reasonable.  *See Strickland*, 466 U.S. at 689 (internal quotation
marks omitted)(petitioner "must overcome the presumptions that,
under the circumstances, the challenged action might be
considered sound trial strategy");  *Rompilla v. Beard*, 545 U.S.
374, 381 (2005)(internal quotation marks omitted) (court affords
"a heavy measure of deference to counsel's judgments").  The
habeas judge determined that counsel had adopted a legitimate
strategy to only rely on the defenses of alibi and
misidentification and had implemented the strategy competently.
Thus, the petitioner had not overcome the presumption that
"counsel's conduct [fell] within the wide range of reasonable

professional assistance" and, under the circumstances, that conduct, "might be considered sound trial strategy." *Strickland*, 466 U.S. at 689.   Accordingly, the habeas judge concluded that the petitioner had not met the deficient performance prong of the ineffective assistance of counsel standard.

The state habeas judge's factual findings and credibility determinations are "presumed to be correct," and the petitioner has the "burden of rebutting [that] presumption of correctness by clear and convincing evidence." 28 U.S.C. § 2254(e)(1).   The petitioner has offered no evidence to rebut the habeas judge's credibility determinations.

This court concludes that the habeas judge reasonably applied the *Strickland* standard in reviewing the petitioner's ineffective assistance of counsel claim and determining that trial counsel's decision to rely on the defenses of alibi and misidentification rather than to challenge the sufficiency of the evidence as to the element of the use of force in connection with the first degree sexual assault charge was a strategic choice that fell within the range of competent professional legal assistance. *See Cullen*, ___ U.S. at ___, 131 S. Ct. at 1406 (noting the "'wide latitude counsel must have in making tactical decisions'" and affirming that "[b]eyond the general requirement of reasonableness, 'specific guidelines are not appropriate'") (quoting *Strickland*, 466 U.S. at 688-89).   The habeas petition is

denied on this ground.

**B.   Ineffective Assistance of Appellate Counsel**

The petitioner appealed his conviction on the following grounds: (1) the trial court erred in denying his motion for judgment of acquittal as to all counts on the ground of insufficiency of the evidence; (2) the trial court improperly permitted the state to introduce certain hearsay statements into evidence under the residual exception in violation of the Sixth Amendment's Confrontation Clause; (3) the trial court erred in permitting the prosecutor to introduce evidence of his prior misconduct; and (4) the trial court failed to adequately investigate his allegations of possible exposure by all jurors to media coverage of the trial and to misconduct by a juror who had been excused on the second day of trial.  *See* Mem. Opp'n Pet. Writ Habeas Corpus, App. C.  On July 15, 2003, the Connecticut Supreme Court affirmed the conviction. *State v. Merriam*, 264 Conn. 617 (2003).

The petitioner contends that his attorney on direct appeal only focused on the element of penetration in her challenge to the sufficiency of the evidence on the first degree sexual assault charge.  He argues that appellate counsel should have also challenged the use of force element of that charge.

The *Strickland* standard is applied to claims of ineffective assistance of counsel on appeal.  *See Smith v. Robbins*, 528 U.S.

26

259, 285 (2000) (citing *Smith v. Murray*, 477 U.S. 527, 535-36 (1986)).  The petitioner must first show that the actions or decisions of appellate counsel were objectively unreasonable.  If petitioner succeeds in demonstrating deficient performance, he must show that counsel's performance resulted in prejudice.  To demonstrate prejudice, a petitioner is required to provide evidence that there is a reasonable probability that but for counsel's unprofessional errors, the result of the appeal would have been different.  *See Smith*, 528 U.S. at 285.

In analyzing the petitioner's ineffective assistance of appellate counsel claims, the state court applied the standard established in *Strickland*.  Because the state court applied the correct legal standard, the state court decision cannot meet the "contrary to" prong of section 2254(d)(1).

Appellate counsel testified at the habeas hearing.  The habeas judge noted that appellate counsel thoroughly reviewed the record to determine the strongest claims to be raised on appeal.  Her review revealed that the trial judge's rulings on the admissibility of hearsay statements and the petitioner's prior acts of misconduct were the strongest claims.  In addition, although the sufficiency of evidence claim with regard to the element of penetration was not a particularly strong claim, appellate counsel felt it was worth asserting on appeal.  *See* Mem. Opp'n Pet. Writ Habeas Corpus, App. P, Jan. 22, 2007 Tr. at

92-99.

Appellate counsel stated that she also considered asserting a sufficiency of the evidence challenge to the use of force element of the sexual assault charge.  After assessing the evidence submitted at trial and reviewing it under the standard that the Appellate Court would apply, i.e., in the light most favorable to sustaining the conviction, appellate counsel concluded that the evidence was sufficient to prove the element of the use of force.  This conclusion as well as her opinion that attacking the sufficiency of the evidence as to the use of force element would undermine her credibility before the Connecticut Supreme Court with regard to the other meritorious claims constituted the reasons for her decision not to raise the use of force claim on appeal.  *See id.*

The habeas judge observed that appellate counsel is under no obligation to raise every conceivably meritorious claim on appeal, but may select for review only those claims that he or she considers to be the strongest.  *See Jones v. Barnes*, 463 U.S. 745, 751 (1983) (appellate counsel need not raise every non-frivolous argument requested by a criminal defendant, as long as the decision not to do so is based on sound professional judgment); *Smith*, 477 U.S. at 536 (important part of appellate advocacy is "winnowing out weaker arguments on appeal and focusing on those more likely to prevail")(internal quotation

marks omitted).  The habeas judge determined that appellate counsel's decision not to raise a claim of insufficiency of evidence as to the use of force element was based on an accurate evaluation of the evidence presented on that element at trial and was well-reasoned.  *See Merriam*, 2007 WL 2034825, at *18-19.

The habeas judge found that the process employed by appellate counsel to weed out patently frivolous and weaker arguments with little chance of success fell within the competence of ordinary professionals and was objectively reasonable.  Thus, the habeas judge concluded that the decision of appellate counsel not to raise the issue of the sufficiency of the evidence as to the element of the use of force regarding the sexual assault charge did not constitute deficient performance. *See id.* at *19.  Upon review, this court concludes that the habeas judge reasonably applied Supreme Court law in his consideration of this claim.

Because the habeas court concluded that the petitioner had not met the deficient performance prong of *Strickland*, it was not required to determine whether the prejudice prong of *Strickland* had been met.  *See Strickland*, 466 U.S. at 697 (courts may consider either prong of the test and need not address both prongs if the defendant fails to meet one of the prongs). The habeas petition is denied on this ground.

IV.  **Conclusion**

The petition for writ of habeas corpus [**Doc. No. 1**] is **DENIED**.  The Clerk is directed to enter judgment in favor of the respondents and close this case.

The court concludes that petitioner has not shown that he was denied a constitutionally or federally protected right. Thus, any appeal from this order would not be taken in good faith and a certificate of appealability will not issue.


SO ORDERED at Hartford, Connecticut this 18th  day of November 2013.


_____/s/ DJS_____
               Dominic J. Squatrito
               United States District Judge

30